IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **DARRELL FLORENCE, DERRICK FOSHEE,** *et al.* | § § § | |
| *Plaintiffs,* | § § § | **C.A. No. 2:19-cv-129** |
| **v.** | § § | **JURY DEMANDED** |
| **LEGACY MEASUREMENT HOLDINGS, LLC,** *et al.* | § § § | |
| *Defendants.* | § § § | |

**JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
AGREEMENT, CERTIFYING CLASS FOR PURPOSE OF SETTLEMENT,
DIRECTING NOTICE TO THE CLASS, AND SCHEDULING
FINAL APPROVAL HEARING**

Plaintiffs Darrell Florence and Derrick Foshee (the "Plaintiffs") filed this class action against Defendants[1] alleging violations of the Worker Adjustment and Retraining Notification Act (the "WARN Act"). After litigating this lawsuit for nearly a year, including motion practice, written discovery, depositions, and a full-day mediation, the Parties[2] have agreed to settle this lawsuit on a class basis, subject to Court approval. The Parties have agreed to settle this lawsuit for a maximum payment by Defendants of $515,000.00, of which, $340,000.00 is allocated towards Plaintiffs' claims of alleged back pay and benefits available under an employee benefit plan, inclusive of non-objectionable attorneys' fees, litigation costs, payroll taxes, enhancement awards, and administration costs. The settlement reached by the Parties meets all the criteria for preliminary approval and preliminary certification as a class action for settlement purposes.

---

[1] For purposes of this Motion, "Defendants" shall collectively refer to the following named Defendants: Legacy Measurement Holdings, LLC ("LMH"), Edelman & Guill Energy LP, II ("Edelman & Guill"), WDE JWM Aggregate, LLC ("WDE"), White Deer Energy, L.P. II ("White Deer II"), and White Deer Energy, L.P. III ("White Deer III").
[2] Collectively, the Defendants and Plaintiffs are the "Parties".

To effectuate the settlement and distribute funds to Settlement Class members, the Parties respectfully request that the Court: (1) grant preliminary approval of the proposed Settlement Agreement (attached as Exhibit 1); (2) certify the proposed class for settlement purposes only; (3) sign the proposed Order; (4) approve and authorize mailing/e-mailing of the Notice of Proposed Settlement and Right to Opt-Out (attached as Exhibit 1-A); and (5) set a date for a final approval hearing more than 60 days after the order of preliminary approval.

## I.    STATEMENT OF FACTS

### A.  Procedural History.

On April 19, 2019, Plaintiffs filed this lawsuit against Legacy Measurement Solutions, Inc. ("LMS"), LMH, WDE, Edelman and Guill, and White Deer II. The allegations centered on terminations related to the closure of LMS's Tyler, Texas and Brookfield, Ohio facilities. Christian Kitchens, the only Plaintiff who allegedly worked in the Brookfield, Ohio facility, was dismissed from this lawsuit on May 6, 2019. Plaintiffs voluntarily dismissed LMS—Plaintiffs' undisputed employer—from the lawsuit on June 4, 2019 after LMS filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Plaintiffs filed their First Amended Complaint on June 7, 2019, and added White Deer III as a named defendant.

Following the filing of Plaintiffs' First Amended Complaint, the Parties agreed to bifurcate this matter to first determine whether any of the named Defendants could be considered an "employer" as defined under the WARN Act (the "Employer Issue"). After addressing the Employer Issue, the lawsuit would proceed to discovery and motion practice on the issue of liability under the WARN Act and certification of a class action under Federal Rule of Civil Procedure 23. The Parties conducted written discovery and depositions related to the Employer Issue, after which, Defendants moved for summary judgment. The Plaintiffs filed a twenty-five-

2

page response to the motion for summary judgment, exclusive of exhibits. Further, during the course of the litigation, the Plaintiffs appeared for Court ordered conferences and hearings, attended bankruptcy hearings in the Southern District of Texas relating to the bankrupt entity Legacy Measurement Solutions, Inc. who employed the Plaintiffs, propounded and responded to written discovery, filed a motion to compel production of documents and took depositions of the corporate representatives and fact witnesses of Defendants.  Following the briefing of the Employer Issue on summary judgment, the Parties attended a full-day mediation on April 9, 2020.

### B.  Settlement Negotiations.

The Parties conducted an extensive investigation of facts during the prosecution of the litigation.  The investigation included the analysis of numerous documents and depositions related to the organization and relationship of Defendants to LMS, as well as the events leading up to the closure of LMS's Tyler, Texas facility. The case ultimately resolved after a full-day mediation with an experienced mediator.

Defendants maintain that they were not "employers" of Plaintiffs or any of the putative class members for purposes of the WARN Act, and deny any liability under the WARN Act. Defendants further deny that, for any purpose other than settling this matter, this action is appropriate for class treatment.  Plaintiffs, on the other hand, assert that Defendants employed Plaintiffs and the putative class members and are liable for damages under the WARN Act. Specifically, Plaintiffs assert under 20 C.F.R. § 639.3(a)(2), Defendants were a single employer of Plaintiffs in that they shared: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations and that no exception to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 et seq., applied to relieve Defendants of liability.

82939963v.4

Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation. Accordingly, in the interests of resolution, representatives of the Parties participated in lengthy settlement negotiations and ultimately reached a settlement after taking into account the disputed factual and legal issues, the risks attendant to further litigation, Defendants' defenses and potential success of their pending Motion for Summary Judgment, and the benefits to be received by the Settlement Class.  Counsel for the Parties concluded that settlement on the terms set forth in this Motion is in the best interest of Plaintiffs, Defendants, and the Settlement Class, and is fair and reasonable.

## II.    THE PARTIES' SETTLEMENT

### A.  The Settlement Terms.

The Settlement Agreement defines the Settlement Class as all LMS employees who worked at LMS's Tyler, Texas facility, and whose employment was terminated on or about March 28, 2019. Ex. 1 at ¶ II.A.

The Settlement provides for a $515,000.00 settlement amount, which is the maximum amount Defendants are required to pay under the Settlement Agreement. Ex. 1 at ¶ IV.E.1.  The settlement amount is reversionary, such that any checks that cannot be delivered or are not cashed within 225 days of the notices being submitted to the prospective plaintiffs will revert to Defendants. Ex. 1 at ¶ IV.G.3. All required payments will be made from this amount, including all payments to the Settlement Class, attorneys' fees and litigation expenses, all payroll and withholding taxes, including all employer payroll taxes, settlement administration costs, and any enhancement awards.  *Id.*

Plaintiffs' counsel has agreed to seek no more than $150,000.00 (this amount represents less than half of the billed hours of attorney time expended by Plaintiffs' counsel pursuing these

4

claims) for their attorneys' fees, which amount includes all litigation expenses. Ex. 1 at IV.E.2.
To the extent the Court approves lesser amounts for attorneys' fees or litigation costs, the
unapproved amounts will be allocated to the Settlement Class on a pro rata basis. Ex. 1 at ¶ IV.E.6.
The Settlement Agreement also provides for each of the Class Representatives, Darrell Florence
and Derrick Foshee, to receive an enhancement payment of $5,000.00. Ex. 1 at ¶ IV.E.3.

The Settlement Administrator will mail, and where possible, e-mail, a notice of preliminary
approval to each Settlement Class member within 15 business days after the Court enters an order
preliminarily approving the Settlement Agreement. Ex. 1 at ¶ IV.C.3. There will be a single re-
mailing of any undeliverable notices and the Settlement Administrator will work diligently to
ensure that any such notices are re-mailed to an updated address, if available. Ex. 1 at ¶ IV.C.7.
Moreover, Class Counsel will exercise due professional diligence to contact any non-responding
class members, including personal phone calls and other means.

Settlement Class members will have 45 days after mailing of the notice to opt out of the
Settlement Agreement or file objections and will also be provided an opportunity to appear at the
final approval hearing to be scheduled by the Court. Ex. 1 at ¶¶ IV.C.5-6.

## B. **The Settlement Payments.**

The amount allocated to settlement payments to the Settlement Class members will be
distributed on a pro rata basis based on the following formula: (the total amount of compensation
an individual Settlement Class member would have earned over 42 working days, based on his or
her regular rate of pay as of March 28, 2019, assuming 8 hours of work per work day ("Back Pay")
plus medical expenses incurred between March 28, 2019 through May 27, 2019, which would have
otherwise been covered by the LMS medical benefit plan, provided the individual Settlement Class
member participated in the LMS medical benefit plan (the "Medical Benefits"))/(total amount of

5

Back Pay and Medical Benefits for all Settlement Class members) x the total Gross Settlement Amount after deduction of all attorneys' fees and expenses, enhancement awards, and the cost of settlement administration. Ex. 1 at ¶ IV.E.7.a. Members of the Settlement Class who opt out of the Settlement will be ineligible to receive any payment. Ex. 1 at ¶ IV.E.7.c. The settlement payments will be allocated 25 percent to wages and 75 percent to penalties/interest. Ex. 1 at ¶ IV.E.7.d. Settlement checks that cannot be delivered or are not cashed after 225 days of mailing will be transmitted back to the Defendants. Ex. 1 at ¶ IV.G.3. Notice will be sent to class members by first-class mail to their last known address within 15 days after the Settlement Agreement is preliminarily approved and will also be sent via e-mail to those class members with last known email addresses. Notices returned as undeliverable will be re-mailed using the most recent contact information from available databases. Class members will have a reasonable amount of time, 45 days from the date the notice is mailed, to object to the settlement or mail an opt-out request. Defendants will send the Settlement Administrator and Class Counsel the final list of Settlement Class members agreed to by the Parties along with a list of the last available phone numbers and email addresses, if known, of all Settlement Class Members.

### III.    ARGUMENT

Pursuant to the Federal Rules of Civil Procedure, a class action can be settled only with court approval. Fed. R. Civ. P. 23(e). It follows that approval of a class action settlement necessarily requires a determination that class action treatment is proper. *See McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426-27 (E.D. Tex. 2002). Once a class has been approved for settlement purposes, and if the Court preliminary approves the settlement, then the Court must direct notice to the Settlement Class members of the settlement and of a final fairness hearing. *Id.*

6

**A.  The Settlement Class Meets the Pre-Requisite Requirements of Rule 23(a).**

Rule 23(a) of the Federal Rules of Civil Procedure provide four threshold requirements that must be met for all class actions: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)-(4).  For settlement purposes, the putative Settlement Class members meet the four requirements of Rule 23(a).

1.    **Numerosity**

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable.  In the instant case, the Settlement Class consists of 59 individuals, which satisfies the numerosity requirement of Rule 23(a)(1). *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (noting that a class larger than forty members "should raise a presumption that joinder is impracticable") (quoting 1 Newberg on Class Actions §3.05, at 3-25 (3d ed. 1992)).

2.    **Commonality**

To establish commonality, the putative Settlement Class members must depend upon a "common contention . . . of such a nature that it is capable of classwide resolution-which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Plaintiffs contend that the primary questions of law and fact central to the claims against Defendants are:

> a.  Whether any of the Defendants were "employers" of Plaintiffs and the Settlement Class members for purposes of the WARN Act; and

7

b. Whether Defendants violated the WARN Act related to LMS's termination of Plaintiffs' and Settlement Class members' employment on or about March 28, 2019.

Thus, for settlement purposes, the proposed Settlement Class members share sufficient commonality to satisfy Rule 23(a)(2).

### 3.    Typicality

To satisfy the typicality requirement, Plaintiffs must show that their claims "are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

Plaintiffs' claims and the claims of the Settlement Class members arise out of the same alleged conduct and are based on the same facts and allegations. In particular, the allegations center on the termination of Plaintiffs' and Settlement Class members' employment from LMS's Tyler, Texas facility on or about March 28, 2019. In particular, Plaintiffs claim Defendants employed Plaintiffs and the Settlement Class members, and that Defendants violated the WARN Act by not providing sufficient notice of the mass layoff and/or plant closure as required by the WARN Act. Both Mr. Foshee and Mr. Florence were employed at LMS's Tyler facility at the time of the subject terminations and have interests typical of the class members. Thus, for settlement purposes, Plaintiffs' claims are sufficiently typical of the putative class to satisfy Fed. R. Civ. P. 23(a)(3).

### 4.    Adequacy of Representation

Rule 23(a)(4) requires a finding that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Rule 23(a)(4) looks at: "(1) the zeal and

8

competence of the representatives' counsel; (2) the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees; and (3) the risk of conflicts of interest between the named plaintiffs and the class they seek to represent." *Slade v. Progressive Sec. Ins. Co.*, 856 F.3d 408, 412 (5th Cir. 2017); *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Class Counsel here have extensive experience litigating and resolving class actions and other complex matters and are well qualified to represent the Class. Since filing this case, Class Counsel have vigorously litigated this action on behalf of the Settlement Class, conducted extensive investigation and discovery, negotiated the proposed Settlement, and have and will continue to fairly and adequately protect the interests of the Settlement Class. Likewise, the Plaintiffs have demonstrated their commitment to the Settlement Class, including by participating in discovery, regularly communicating with Class Counsel about the case, and reviewing and approving the proposed Settlement. Finally, Plaintiffs' interests are aligned with and are not antagonistic to the interests of the Settlement Class. Plaintiffs and the Settlement Class Members share an interest in obtaining relief from Defendants for the alleged statutory violation.

## B. The Settlement Class Meets the Requirements of Rule 23(b)(3) for Settlement Purposes.

In addition to satisfying the Rule 23(a) prerequisites, the proposed class must also satisfy the requirements of Rule 23(b)(1), (2), or (3). *See In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010). In the case at hand, for purposes of settlement only, the proposed Settlement Class satisfies the two prongs in under Rule 23(b)(3): (1) there are questions of law or fact common to class members that predominate over any questions affecting only individual members; and (2) a class action is superior to other available methods for fairly and effectively adjudicating the controversy. Fed. R. Civ. P. 23(b)(3). Under the Rule 23(b)(3) predominance analysis, the Court must determine

9

whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

1.    **Predominance**

The predominance requirement is satisfied if a plaintiff establishes that common issues of facts and potential legal remedies dominates the litigation. *Melby v. Am.'s MHT, Inc.*, Civil Action No. 3:17-cv-155-M, 2018 WL 10399004, at *5 (E.D. Tex., June 22, 2018) Plaintiffs assert that the common nucleus of facts in the present case derives from the termination of LMS's employees at its Tyler, Texas facility in March 2019, and Defendants' alleged failure to provide timely WARN Act notices. Based on these alleged violations of law, Plaintiffs allege that the Settlement Class members would be entitled to the same legal remedies. Accordingly, preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper. Additionally, Plaintiffs contend that class certification in this case serves the judicial economy function of Rule 23 class actions.

2.    **Superiority**

Plaintiffs allege that a proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives. "Class actions are superior when individual actions would be wasteful, duplicative, or adverse to judicial economy." *Id.* at *6 (citing *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 627 (5th Cir. 1999)). Plaintiffs assert that the alternative method of resolution is almost 60 individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendants and the Court because it would cause an extensive duplication of efforts and resources. Because it is likely that each individual Settlement Class member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions. Additionally, in the instant action, the Settlement Class members have the option to opt out of the proposed settlement, thus allowing individuals the opportunity to

10

control the litigation.

There is no other pending litigation involving the Settlement Class members, and Plaintiffs assert that concentrating the litigation of the claims in a particular forum would be the most efficient manner of adjudicating all of the claims of the Settlement Class. For purposes of preliminary approval of the Settlement Agreement, there is no reason why concentrating the litigation in this Court would be undesirable.

Lastly, under Rule 23(b)(3)(D), the Court may consider likely difficulties in managing a class action. In the context of a settlement, however, considerations regarding management of the class action are irrelevant, because the proposal to the court is to avoid trial through a settlement agreement. *See Amchem*, 521 U.S. at 620. In light of these considerations, preliminary certification of the Settlement Class for settlement purposes is proper under the requirements of Rule 23(b)(3).

## C. **The Court Should Preliminarily Approve the Settlement.**

"The gravamen of an approved proposed settlement is that it be fair, adequate, and reasonable and is not the product of collusion between the parties." *All Plaintiffs v. All Defendants*, 645 F.3d 329, 334 (5th Cir. 2011). To guide the Court's review of the Settlement Agreement, the Fifth Circuit identified the following six factors:

> (1) evidence that the settlement was obtained by fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the litigation and available discovery; (4) the probability of plaintiffs' prevailing on the merits; (5) the range of possible recovery and certainty of damages; and (6) the opinions of class counsel, class representatives, and absent class members.

*See Newby v. Enron Corp.*, 394 F.3d 296, 301 (5th Cir. 2004). Applying this six-factor test, the Settlement Agreement reached by the Parties is fair, adequate, reasonable, and not the product of collusion, and accordingly, should be preliminarily approved.

### 1.        **There was no fraud or collusion**

As discussed above, the Parties have litigated this case for over a year now, during which

time they have engaged in extensive written discovery, depositions, and complex briefing on the Employer Issue. After the Parties completed discovery and fully briefed the Employer Issue, they attended a full-day mediation with an experienced mediator.  A resolution was not reached at the mediation and the Parties continued to negotiate for another week before finally agreeing to tentative terms that have since been incorporated in the Settlement Agreement. The Parties conducted settlement negotiations at arm's length and ultimately arrived a fair, reasonable, and adequate settlement.

2.      **Complexity, expense, and likely duration of litigation**

The claims and defenses asserted in this matter are complicated.  For example, Defendants vigorously argued, and continue to deny, that any of the named Defendants employed Plaintiffs or the putative Settlement Class members for purposes of WARN Act liability. To the extent Plaintiffs could establish "employer" status on behalf of any of the Defendants, the Defendants also asserted the unforeseen business circumstances and faltering business exceptions to the WARN Act. An indicia of the complexity of this case is the fact that it was bifurcated to first address the Employer Issue before even reaching the merits of Plaintiffs' claims.

This case has been on the docket for over a year now, and had the Parties not settled at this time, the Parties anticipate this matter would have been litigated for at least another eight to nine months. During this time, the Parties would have conducted additional discovery on Plaintiffs' class action allegations as well as the exceptions to the WARN Act pled by the Defendants.  As a result, the Parties anticipate they would have incurred significant cost in undergoing additional discovery, dispositive motion briefing, and preparation for trial.

3.      **The stage of litigation and available discovery**

The Parties reached a settlement after engaging in written discovery, depositions, and

summary judgment briefing on the Employer Issue. Although the ultimate issue of liability was bifurcated and relegated to the second half of the Docket Control Order, the Parties engaged in some discovery related to Defendants' defenses to the WARN Act, such as the applicability of the faltering business and unforeseen business circumstances exceptions. The Parties believe they had more than sufficient discovery to engage in a knowledgeable and equitable arm's length settlement negotiation.

4.    <b>The probability of Plaintiffs' prevailing on the merits</b>

The Settlement provides substantial monetary relief to the Settlement Class that is well-tailored to the alleged harm. Plaintiffs in this case allege that Defendants failed to give the required WARN Act written notice to Plaintiffs and similarly situated individuals (the "Putative Class Members") in connection with the Mass Layoff and/or Plant Closing at Defendants' East Texas site of employment. Plaintiffs allege Defendants do not have any excuse or exemption from complying with the WARN Act. Plaintiffs initially brought suit against Defendants and Legacy Measurement Solutions, Inc., the employer of Plaintiffs at the time of the mass layoffs and/or plant closure. However, shortly after Plaintiffs filed suit, Legacy Measurement Solutions, Inc. filed for bankruptcy and Plaintiffs voluntarily dismissed this entity on June 4, 2019 and continued with the suit against Defendants. Plaintiffs allege that under 20 C.F.R. § 639.3(a)(2), at all material times, Defendants were separate employers of Plaintiffs under the WARN Act in that they shared common: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations. Plaintiffs allege that in applying the Department of Labor's five-part test, as adopted by the Fifth Circuit, to the entities and facts presented here, it becomes clear Defendants are considered a "single employer" with the defunct Legacy Measurement Solutions, Inc. ("LMS")

13

which fired workers in violation of the WARN Act. Accordingly, Plaintiffs believe Defendants are liable under the WARN Act. Defendants submitted a robust opposition to the Plaintiffs claims, including a motion for summary judgment on the Employer Issue, which was pending when the parties reached an agreement. Further, Defendants were anticipated to object to Plaintiffs' Motion for class certification. While Plaintiffs absolutely believe that these obstacles are not insurmountable, they are indicative of the substantial risks that Plaintiffs and the proposed Settlement Class would face if the litigation were to continue, including the prospect of appeals. The proposed Settlement provides considerable, appropriately tailored relief while allowing Settlement Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

5.      **The range of possible recovery and certainty of damages**

Plaintiffs' potential damages, and the potential damages of the putative Settlement Class members, are limited by the WARN Act. Specifically, the WARN Act provides that employers who violate the WARN Act are liable to aggrieved employees for: (1) back pay for each day of the WARN Act violation; and (2) benefits available under an employee benefit plan, including the costs of medical expenses incurred during the period of the WARN Act violation that would have been covered under an employee benefit plan. *See* 29 U.S.C. § 2104(a)(1).

The Parties estimate that if Plaintiffs and all of the putative Settlement Class members prevailed completely in their claims against Defendants, then the potential recovery, not including attorneys' fees and costs, would be approximately $600,000.00-$650,000.00. The Parties settled for a total of $515,000.00, of which, $340,000.00 is allocated towards Plaintiffs' claims of alleged back pay and benefits available under an employee benefit plan. That amounts to more than 50% of Plaintiffs' potential recovery if they are successful in Court, and does not assume any reductions

14

in liability if Defendants could successful assert a "good faith" defense. *See* 29 U.S.C. § 2104(a)(4). Accordingly, the settlement amount falls squarely within the potential recovery available to Plaintiffs and takes into account the certainty of damages.

6. **The opinions of class counsel, class representatives, and absent class members**

"[W]here the parties have conducted an extensive investigation, engaged in significant fact-finding and Lead Counsel is experienced in class-action litigation, courts typically defer to the judgment of experienced trial counsel who has evaluated the strength of his case." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *21 (N.D. Tex. Nov. 8, 2005) (citation and internal quotations omitted); *Colton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977) (in "evaluating the terms of the compromise in relation to the likely benefits of a successful trial…the trial court is entitled to rely upon the judgment of experienced counsel for the parties"); *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 292 (W.D. Tex. 2007) (class counsel's opinion "is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims").

Class Counsel in this case have extensive experience litigating and settling class actions and other complex matters, have conducted extensive fact and corporate representative discovery in this case, and have conducted an extensive investigation into the factual and legal issues raised. Based on their experience and knowledge about this case, Class Counsel have weighed the benefits of the Settlement against the inherent risks, complexities, and expense of continued litigation, and they believe that the proposed Settlement is fair, reasonable, and adequate. Likewise, Defendants are represented in this case by highly qualified and experienced counsel, who likewise were well informed about the issues in this case. That qualified and well-informed counsel endorse the

15

Settlement as being fair, reasonable, and adequate further supports approving the Settlement. The positive reaction to date from the Settlement Class also supports approval.

### D. The Court Should Approve the Proposed Notice and Claim Form.

Once the Court determines that the settlement is fair, then the Federal Rules direct the Court to provide notice to the class members of a formal fairness hearing. *See, e.g., McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 432 (E.D. Tex. 2002); Fed. R. Civ. P. 23(e). The notice should be provided in a "reasonable manner" that is "practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). Specifically, the Federal Rules require that the notice provide, clearly, concisely, and in easily understood language:

1. The nature of the action;
2. The definition of the class certified;
3. The class claims, issues, or defenses;
4. That a class member may enter an appearance through an attorney if the member so desires;
5. That the court will exclude from the class any member who requests exclusion;
6. The time and manner for requesting exclusion; and
7. The binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Telles v. Midland College*, 2018 WL 7352426, at *4 (E.D. Tex., Apr. 30, 2018).

The proposed Notice, Exhibit 1-A, satisfies all these elements. First, it explains the nature of the action, in particular that it pertains to all individuals who worked at LMS's Tyler, Texas facility and were terminated on or about March 28, 2020.

Second, the Notice apprises Settlement Class members of the pendency of the settlement and informs them of all material settlement terms. The Notice explains that class members who "do nothing" will remain in the Settlement Class, receive a settlement payment, and be bound by the settlement and all orders and judgments. The Notice describes how to opt out of the settlement,

16

and informs class members that if they do not opt out they will receive a share of the Gross Settlement Amount based on a calculation of their final rate of pay over a period of 42 working days plus medical expenses incurred between March 28, 2019 and May 27, 2019.

Third, the Notice advises class members that they can examine the Settlement Agreement and all other pleadings from this lawsuit through the Court. Finally, class members are provided full notice of their right to file objections, attend the fairness hearing, or hire their own attorney at their expense.

The proposed manner of notice and timetable for further proceedings are also reasonable. Notice will be sent to class members by first-class mail to their last known address within 15 days after the Settlement Agreement is preliminarily approved, and will also be sent via e-mail to those class members with last known email addresses. Notices returned as undeliverable will be re-mailed using the most recent contact information from available databases. Class members will have a reasonable amount of time, 45 days from the date the notice is mailed, to object to the settlement or mail an opt-out request.

The Parties will file a Joint Motion for Final Approval of the Settlement within 7 days after the end of the objections period, so as to permit compliance with the Class Action Fairness Act, 28 U.S.C. § 1715(d). The Parties request that thereafter the Court hold a fairness hearing for the purpose of determining whether to grant final approval of the Settlement.

## IV.    **CONCLUSION**

The proposed Settlement Agreement is fair, adequate, and reasonable. It will result in considerable payments to Settlement Class members; it is non-collusive; and it was achieved as the result of informed, extensive, and arm's length negotiations conducted by experienced counsel for the respective Parties. For the foregoing reasons, the Parties respectfully request that the Court:

(i) grant preliminary approval of the proposed Settlement Agreement; (ii) certify the proposed class for settlement purposes; (iii) sign the proposed Order; (iv) approve and authorize mailing/emailing of the proposed Class Notice of Proposed Class Action Settlement; and (v) set a date for a final approval hearing more than 60 days after the order of preliminary approval.

Respectfully submitted,

By:/s/ J. Michael Rose
**J. Michael Rose**
Texas Bar No. 24041819
**Evan C. Blankenau**
Texas Bar No. 24092142
**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002-3095
Telephone:    (713) 226-1684
Facsimile:    (713) 229-2626
Email: mrose@lockelord.com
Email: evan.blankenau@lockelord.com
**ATTORNEYS FOR DEFENDANTS LEGACY MEASUREMENT HOLDINGS, LLC, WDE JWM AGGREGATE, LLC, EDELMAN & GUILL ENERGY L.P. II, WHITE DEER ENERGY, L.P. II, AND WHITE DEER ENERGY, L.P. III**

**AND**

By:/s/ Jeffrey T. Embry *w/perm. ECB
**Jeffrey T. Embry**
State Bar No. 24002052
jeff@hossleyembry.com
**Christopher P. Peirce**
State Bar No. 24046604
cpeirce@hossleyembry.com
**Hossley & Embry, LLP**
515 S. Vine Ave.
Tyler, Texas 75702
(903) 526-1772
(903) 526-1773 (fax)
**ATTORNEYS FOR PLAINTIFFS**

82939963v.4

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of June 2020, a true and correct copy of the above and foregoing instrument was served upon all counsel of record referenced below via the Court's ECF Filing System:

Jeffrey T. Embry
Christopher P. Peirce
HOSSLEY & EMBRY, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Telephone: (903) 526-1772
Facsimile: (903) 526-1773
jeff@hossleyembry.com
cpeirce@hossleyembry.com

/s/ Evan C. Blankenau
Evan C. Blankenau

82939963v.4