**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **DARRELL FLORENCE, DERRICK FOSHEE,** *et al.* | § § § | |
| *Plaintiffs*, | § § | |
| | § | **C.A. No. 2:19-cv-129-JRG** |
| **v.** | § § | **JURY DEMANDED** |
| **LEGACY MEASUREMENT HOLDINGS, LLC,** *et al.* | § § § | |
| *Defendants*. | § § § | |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL
APPROVAL OF CLASS SETTLEMENT, ATTORNEYS' FEE
AND COSTS AWARD, AND CLASS REPRESENTATIVE INCENTIVE AWARDS**

Darrell Florence and Derrick Foshee, individually and as Class Representatives, bring this Motion for Final Approval of Class Settlement, Attorneys' Fee and Costs Award, and Class Representative Incentive Awards, and show the Court the following:

**I.**

**STATEMENT OF ISSUES TO BE DECIDED**

This Motion requires this Court to determine the following issues: (1) whether to grant final approval of the subject class settlement; (2) whether to approve the proposed class counsel's attorneys' fees and expense reimbursement request; (3) whether to approve the requested $5,000 class representative incentive payments to Mr. Foshee and Mr. Florence.

**II.**
**BACKGROUND**

**A.      Class Representatives and Members of the Class Are Terminated**

This litigation arises from alleged violations of the Worker Adjustment and Retraining Notification Act (the "WARN Act") by Defendants[1]. The WARN Act applies to any company that employs 100 or persons and requires an employer to provide 60 days' notice before terminating employees as part of a mass layoff or plant closing.  In March 2019, Mr. Foshee, Mr. Florence, and members of the Class were working for Legacy Measurement Solutions, Inc. at its Tyler, Texas facility. The company manufactured gas pipeline pressure and flow measuring and monitoring equipment. On Thursday, March 28, 2019, the class members all received notice via email that they were terminated effective immediately. However, there are certain exceptions that alleviate the need to comply with this notice requirement, including if the entity involved qualified as a "faltering entity" that has been actively seeking financing and unable to secure any such financing.

**B.      Messrs. Foshee and Florence, along with other Class Members Hire the Undersigned**

Mr. Foshee and Mr. Florence contacted the undersigned to discuss their termination and explore their legal rights related to the WARN Act. All total, there were 59 LMS employees who were terminated at the Tyler, Texas facility. In addition to Mr. Foshee and Mr. Florence, some 25 other former LMS employees also hired the undersigned counsel. Mr. Foshee and Mr. Florence agreed to serve as class representatives and have served in that capacity. These gentlemen have closely monitored this litigation and provided assistance to counsel throughout. In addition, when

---

[1] For purposes of this Motion, "Defendants" shall collectively refer to the following named Defendants: Legacy Measurement Holdings, LLC ("LMH"), Edelman & Guill Energy LP, II ("Edelman & Guill"), WDE JWM Aggregate, LLC ("WDE"), White Deer Energy, L.P. II ("White Deer II"), and White Deer Energy, L.P. III ("White Deer III"). Collectively, the Defendants and Plaintiffs are the "Parties".

necessary they have helped gather discovery related documents and helped communicate with members of the class.

## C.    The Litigation

On April 19, 2019, Plaintiffs filed this lawsuit against Legacy Measurement Solutions, Inc. ("LMS"), LMH, WDE, Edelman and Guill, and White Deer II. The allegations centered on terminations related to the closure of LMS's Tyler, Texas and Brookfield, Ohio facilities. Christian Kitchens, the only Plaintiff who allegedly worked in the Brookfield, Ohio facility, was dismissed from this lawsuit on May 6, 2019. Plaintiffs voluntarily dismissed LMS—Plaintiffs' undisputed employer—from the lawsuit on June 4, 2019 after LMS filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. Plaintiffs filed their First Amended Complaint on June 7, 2019 and added White Deer III as a named defendant. Thus, Plaintiffs' remaining claims in this litigation involved allegations that entities affiliated with LMS qualified as co-employer under the WARN Act and its interpreting regulations.

Following the filing of Plaintiffs' First Amended Complaint, the Parties agreed to bifurcate this matter to first determine whether any of the named Defendants could be considered an "employer" as defined under the WARN Act (the "Employer Issue"). After addressing the Employer Issue, the lawsuit would proceed to discovery and motion practice on the issue of liability under the WARN Act and certification of a class action under Federal Rule of Civil Procedure 23. The Parties conducted extensive written discovery and multiple depositions related to the Employer Issue, after which, Defendants moved for summary judgment. Plaintiffs filed a twenty-five-page response to the motion for summary judgment, supported by a wide variety of accompanying evidence. Further, during the course of the litigation, Plaintiffs appeared for Court ordered conferences and hearings, attended bankruptcy hearings in the Southern District of Texas

relating to the bankrupt LMS, propounded and responded to written discovery, submitted a motion to compel additional documents with associated briefing, and took depositions of the corporate representatives and fact witnesses of Defendants. Following the briefing of the Employer Issue on summary judgment, the Parties attended a full-day mediation on April 9, 2020. The case did not settle during the formal mediation, but after further intense negotiations over the following week the case was resolved. The negotiation and resolution of this case was an adversarial, arms-length process.

**D.    The Parties' Settlement Negotiations**

The Parties conducted an extensive investigation of facts during the prosecution of the litigation. The investigation included the analysis of numerous documents and depositions related to the organization and relationship of Defendants to LMS, as well as the events leading up to the closure of LMS's Tyler, Texas facility.

Defendants maintain that they were not "employers" of Plaintiffs nor any of the putative class members for purposes of the WARN Act and deny any liability under the WARN Act. Defendants further deny that, for any purpose other than settling this matter, this action is appropriate for class treatment. Plaintiffs, on the other hand, assert that Defendants would qualify as co-employers of Plaintiffs and the putative class members and are liable for damages under the WARN Act. Specifically, Plaintiffs assert under 20 C.F.R. § 639.3(a)(2), Defendants were a single employer of Plaintiffs in that they shared: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations and that no exception to the Worker Adjustment and Retraining Notification Act of 1988, 29 U.S.C. §§ 2101-2109 et seq., applied to

relieve Defendants of liability. Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation.

The Parties mediated the case on April 9, 2020.  After the mediation, the Parties continued multiple back and forth exchanges of various proposals conducted at arm's length with the mediator's assistance. The parties continued settlement discussions until April 17, 2020, when the parties reached an agreement in principle outlining the benefits of the settlement to class members and attorney's fees for Class Counsel. The parties memorialized their agreement in the Settlement Agreement which is attached hereto as Exhibit 1.

## E.    The Settlement Agreement

The Settlement Agreement defines the Settlement Class as all LMS employees who worked at LMS's Tyler, Texas facility, and whose employment was terminated on or about March 28, 2019.[2] The Ohio facility employees are not included in the class because it was determined during discovery that timely WARN Act notice was provided to the Ohio employees.

The Settlement provides for a $515,000.00 settlement amount, which is the maximum amount Defendants are required to pay under the Settlement Agreement.[3] The settlement amount is reversionary, such that any checks that cannot be delivered or are not cashed within 225 days of the notices being submitted to the prospective plaintiffs will revert to Defendants.[4] However, there are only 59 members of the Class and Plaintiffs' counsel has been in contact with all members of the Class and there should be no issue with delivery and receipt of any check. All required payments will be made from this amount, including all payments to the Settlement Class,

---

[2] **Exhibit 1** at ¶ II.A.
[3] *See id.* at ¶ IV.E.1.
[4] *See id.* at ¶ IV.G.3.

attorneys' fees and litigation expenses, all payroll and withholding taxes, including all employer payroll taxes, settlement administration costs, and any enhancement awards.[5]

If successful at trial, each member of the class would have been entitled to recover back pay in the amount of their then existing hourly rate, multiplied by the number of hours they would have typically worked in a 60-day period. The settlement equates to each class member recovering 71.9% of the amount of their total claim.

Plaintiffs' counsel has agreed to seek no more than $150,000.00 (this amount represents less 60 percent of the billed hours of attorney time expended by Plaintiffs' counsel pursuing these claims) for their attorneys' fees, which amount includes all litigation expenses.[6] The Settlement Agreement also provides for each of the Class Representatives, Darrell Florence and Derrick Foshee, to receive an enhancement payment of $5,000.00.[7]

Defendants have agreed not to oppose a fee application by Class Counsel that requests fees and expenses up to the amount of one hundred and fifty thousand dollars ($150,000). In accordance with this agreement, class counsel is seeking a recovery of $150,000 for attorneys' fees and expenses. This figure represents significantly less than the 40% contingency fee that was agreed upon with the class members, and significantly less than the fair market hourly rate for the amount of time spent by class counsel is pursuing this matter.

F.    **Class Notice and Class Members Response**

The Court's Preliminary Approval Order directed the Parties to disseminate mailed notice to the Settlement Class Members. The Parties identified the Settlement Class Members as all LMS employees who worked at LMS's Tyler, Texas facility, and whose employment was terminated

---

[5] *Id.*
[6] *Id.* at IV.E.2
[7] *Id.* at ¶ IV.E.3.

on or about March 28, 2019.  Defendants provided the Settlement Administrator and Class Counsel

the final list of Settlement Class members along with a list of the last available phone numbers and

email addresses within thirty days of the Court's June 12, 2020 Order (Dkt. 57). This "class list"

of members was developed through a thorough and reasonable process which produced a

reasonably accurate list given all the information available.

The Settlement Administrator, IYLM Group ("IYLM"), was engaged by the Parties'

Counsel and subsequently approved and appointed by the Court to provide notification services

and claims administration, pursuant to the terms of the Settlement. Duties performed to-date and

to be performed after Final Approval of the Settlement is granted, include: (a) printing and mailing

the *Notice of Pendency of Class Action Settlement,  Final Hearing, and a Medical Expense Claim

Form* (referred to as "Notice Packet"); (b) receiving and processing requests for exclusion; (c)

calculating individual settlement award amounts; (d) processing and mailing settlement award

checks; (e) handling tax withholdings as required by the Settlement and the law; (f) preparing,

issuing and filing tax returns and other applicable tax forms; (g) handling the distribution of any

unclaimed funds pursuant to the terms of the Settlement; and (h) performing other tasks as the

Parties mutually agree to and/or the Court orders ILYM Group to perform.[8]

On June 12, 2020, ILYM received the Court approved text for the Notice Packet from

Counsel for Plaintiff.  ILYM prepared a draft of the formatted Notice Packet, which was approved

by the Parties' Counsel prior to mailing.[9] On June 23, 2020, ILYM received the class data file

from Counsel for Defendants, which contained the name, social security number, last known

mailing address, email addresses, back pay component for each settlement Class Member, and the

hourly rate for each Settlement Class Member. The data file was uploaded to IYLM's database

---

[8] *See* Declaration of Makenna Snow p. 2. **Exhibit 2**.
[9] *Id*.

and checked for duplicates and other possible discrepancies. The Class List contained 59 individuals.[10]

All 59 names and addresses contained in the Class List were then processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the Settlement Class Members before mailing of the Notice Packet.[11]The NCOA contains requested change of addresses filed with the USPS. To the extent that an updated address was found in the NCOA database, the updated address was used for the mailing of the Notice Packet. To the extent that no updated address was found in the NCOA database, the original address provided by Counsel for Defendants was used for the mailing of the Notice Packet.[12]

On June 29, 2020, the Notice Packet was mailed, via U.S First Class Mail, to all 59 individuals contained in the Class List. Attached hereto, as **Exhibit 3**, is a true and correct copy of the mailed Notice Packet.[13] As of the date of this filing, 3 Notice Packets have been returned to IYLM's offices as undeliverable. Of the 3 returned Notice Packets, none included were returned with a forwarding address.  ILYM performed a computerized skip trace on the 3 returned Notice Packets that did not have a forwarding address, in an effort to obtain an updated address for purpose of re-mailing the Notice Packet. As a result of this skip trace, 2 updated addresses were obtained and the Notice Packet was promptly re-mailed to those Settlement Class Members, via U.S First Class Mail. As of the date of this filing, a total of 2 Notice Packets have been re-mailed. Specifically, 2 have been re-mailed as a result of ILYM's skip tracing efforts. As of the date of this filing, a total of 1 Notice Packets has been deemed undeliverable. Specifically, 1 has been

---

[10] *See* Declaration of Makenna Snow p. 3. **Exhibit 2**.
[11] *Id.*
[12] *Id.*
[13] *Id.*

deemed undeliverable as no updated address was found notwithstanding the skip tracing. As of the date of this filing, ILYM has not received requests for exclusion. The deadline to request exclusion from the Settlement was August 13, 2020.[14]

As of the date of this filing, ILYM has received 1 Medical Expense Claim for $5077.80. The deadline to submit a Medical Expense Claim for the Settlement was August 13, 2020. As of the date of this filing, ILYM has not received any objections to the Settlement. The deadline to file an objection to the Settlement was August 13, 2020.[15] As of the date of this filing, ILYM will report a total of 59 Participating Claimants, representing 100% of the 59 Settlement Class Members.[16]

Participating Claimants will receive a proportional share of the Net Settlement Fund through individual settlement payments, based on the Hourly Rate and Back Pay for each Class Members. The Net Settlement Fund is the amount remaining after deduction of the Court-approved payments from the Gross Settlement Fund for Class Counsel Fees and Litigation Costs, the Class Representative Enhancement Award, Claims Administration Fees to ILYM Group, and the PAGA allocation, e.g.,

| | |
|---|---|
| **Gross Settlement Fund** | $515,000.00 |
| Class Counsel Fees/Costs | $150,000.00 |
| Enhancement Award-Darrell Florence | $5,000.00 |
| Enhancement Award-Derrick Foshee | $5,000.00 |
| Administration Fees | $7,500.00 |
| Medical Expense Pay Out | $5,077.80 |

---

[14] *See* Declaration of Makenna Snow p. 3. **Exhibit 2**.
[15] *See id*. pp. 3-4.
[16] *See id.*

**Net Settlement Fund (estimated)    $342,422.50[17]**

To determine a Participating Claimant's individual settlement award payment, the amount of each Class Members' Back Pay was divided by the total amount of Back Pay for all Class Members to determine their pro rata share of the Net Settlement Amount, and then multiplying their pro rata share by the Net Settlement Amount. Based on these calculations, the Participating Claimants will receive an estimated average gross payment of $5,803.77, with the estimated highest gross payment being $19,760.75.[18] Again, these amounts equate to 71.9% of the total amount each class member would have been entitled to at a trial on the merits.

## II.

### THE SETTLEMENT MEETS ALL REQUIREMENTS AND SHOULD BE APPROVED AS FAIR, REASONABLE, AND ADEQUATE

The considerations that guide a district court's determination whether to approve the settlement of a class-action are well-established.  Final approval of a classwide settlement may only occur "after a hearing and on finding that the settlement is fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(1)(C). The "cardinal rule" for approving a proposed settlement is that the Court find it is "fair, adequate, reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). A district court's "approval of a proposed settlement may not be overturned on appeal absent an abuse of discretion." *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). The district court must "ensure that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression." *Id.* (quoting *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157, 1214 (5th Cir. 1978)); *see also DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D.

---

[17] *See* Declaration of Makenna Snow p. 3. **Exhibit 2** and **Exhibit 3**.
[18] *See id.*

Tex. 2007). The Fifth Circuit has developed a six-factor test (commonly referred to as the *Reed* or *Parker* factors) for evaluating whether a proposed class action settlement should be approved.  The factors are:

> (1)  the existence of fraud or collusion behind the settlement;
>
> (2)  the probability of plaintiffs' success on the merits;
>
> (3)  the range of possible recovery;
>
> (4)  the complexity, expense, and likely duration of litigation;
>
> (5)  the stage of the proceedings and the amount of discovery completed; and
>
> (6)  the opinions of class counsel, class representatives, and absent class members.

*DeHoyos*, 240 F.R.D. at 286-87; *see also Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982); *Newby v. Enron Corp*., 394 F.3d 296, 301 (5th Cir. 2004). In considering the six *Reed* factors, "there is a strong presumption in favor of finding the settlement fair, adequate and reasonable." *Dehoyos*, 240 F.R.D. at 287; *Parker*, 667 F.2d at 1209 (noting "the strong judicial policy favoring the resolution of disputes through settlement"). The proposed settlement is not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation." *DeHoyos*, 240 F.R.D. at 286 (citation omitted). "Rather, compromise is the essence of settlement, and the Court may rely on the judgment of experienced counsel for the parties." *Id*. Here, an analysis of the *Reed* factors demonstrates that the proposed settlement should be approved.

> **A.    The Absence of Fraud or Collusion Behind the**
> **Settlement Favors Approval of the Settlement**

A settlement is entitled to a "strong presumption" of fairness "if the district court determines that the settlement resulted from arms-length negotiations between experienced counsel and was not tainted by fraud or collusion.  *Turner v. Murphy Oil USA, Inc.*, 472 F. Supp.

2d 830, 844 (E.D. La. 2007); *see also DeHoyos*, 240 F.R.D. at 287. In assessing whether the settlement was obtained through fraud or collusion, courts presume neither exists unless there is evidence to the contrary.  *See DeHoyos*, 240 F.R.D. at 287 ("There is . . . a presumption [that] no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." (citation omitted)). There is no evidence of fraud or collusion here.  Both parties were represented by experienced counsel, and the settlement agreement was reached through arms-length negotiations. The settlement provides for substantial and tangible benefits to the class members. Each class member is recovering 71.9% of the total amount of back pay to which they would be entitled at a trail on the merits.  In short, the settlement was achieved "in the full context of the adversarial process." *Turner*, 472 F. Supp. 2d at 846. Accordingly, the first factor weighs in favor of approving the settlement.

### B.    The Legal and Factual Obstacles to Plaintiffs' Ability to Prevail on the Merits Favors Approval of the Settlement

Without this Settlement, the Settlement Class Members would face numerous and substantial legal challenges at every stage, including challenges to their claims' merits and to class certification, any one of which could substantially prolong this litigation at great expense and ultimately result in no recovery. The Settlement provides substantial monetary relief to the Settlement Class that is well-tailored to the alleged harm. Plaintiffs in this case allege that Defendants failed to give the required WARN Act written notice to Plaintiffs and similarly situated individuals (the "Putative Class Members") in connection with the Mass Layoff and/or Plant Closing at LMS's East Texas site of employment. Plaintiffs allege Defendants do not have any excuse or exemption from complying with the WARN Act. Plaintiffs initially brought suit against Defendants and Legacy Measurement Solutions, Inc., the employer of Plaintiffs at the time of the mass layoffs and/or plant closure. However, shortly after Plaintiffs filed suit, Legacy Measurement

Solutions, Inc. filed for bankruptcy and Plaintiffs voluntarily dismissed this entity on June 4, 2019 and continued with the suit against Defendants. Plaintiffs allege that under 20 C.F.R. § 639.3(a)(2), at all material times, Defendants were separate employers of Plaintiffs under the WARN Act in that they shared common: (i) common ownership, (ii) common directors and/or officers, (iii) de facto exercise of control, (iv) unity of personnel policies emanating from a common source, and (v) the dependency of operations. Plaintiffs allege that in applying the Department of Labor's five-part test, as adopted by the Fifth Circuit, to the entities and facts presented here, it becomes clear Defendants are considered a "single employer" with the defunct Legacy Measurement Solutions, Inc. ("LMS") which fired workers in violation of the WARN Act. Accordingly, Plaintiffs believe Defendants are liable under the WARN Act. Defendants submitted a robust opposition to the Plaintiffs claims, including a motion for summary judgment on the single employer issue, which was pending, when the parties reached an agreement. Further, Defendants were anticipated to object to Plaintiffs' Motion for class certification. While Plaintiffs absolutely believe that these obstacles are not insurmountable, they are indicative of the substantial risks that Plaintiffs and the proposed Settlement Class would face if the litigation were to continue, including the prospect of appeals. The proposed Settlement provides considerable, appropriately tailored relief while allowing Settlement Class Members to avoid the risks of unfavorable, and in some cases dispositive, rulings on these and other issues.

### C.   The Range of Possible Recovery and Certainty of Damages Weighs in Favor of Approval

The third factor—the range of possible recovery and certainty of damages—also weighs in favor of approval.  This factor requires the Court to determine whether the proposed settlement amount is inadequate by comparing the settlement amount with the range of potential recovery available through trial. *See Batchelder v. Kerr-McGee Corp.*, 246 F. Supp. 2d 525, 529 (N.D. Miss.

2003) ("No evidence has been offered to the court indicating that the value of the proposed settlement is inadequate in relation to the amount that a jury could have awarded. . . . [T]he court concludes that the amount of the settlement, in comparison with the range of potential recovery by jury verdict, supports the fairness, adequacy, and reasonableness of the settlement."); *see also In re Shell Oil Refinery*, 155 F.R.D. 552, 563-65 (E.D. La. 1993). Plaintiffs' potential damages, and the potential damages of the putative Settlement Class members, are limited by the WARN Act. Specifically, the WARN Act provides that employers who violate the WARN Act are liable to aggrieved employees for: (1) back pay for each day of the WARN Act violation; and (2) benefits available under an employee benefit plan, including the costs of medical expenses incurred during the period of the WARN Act violation that would have been covered under an employee benefit plan. *See* 29 U.S.C. § 2104(a)(1).

The Parties estimate that if Plaintiffs and all of the putative Settlement Class members prevailed completely in their claims against Defendants, then the potential recovery, not including attorneys' fees and costs, would be approximately $600,000.00-$650,000.00. The Parties settled for a total of $515,000.00, of which, $340,000.00 is allocated towards Plaintiffs' claims of alleged back pay and benefits available under an employee benefit plan. That amounts to 71.9% of Plaintiffs' potential recovery if they are successful in Court and does not assume any reductions in liability if Defendants could successful assert a "good faith" defense. *See* 29 U.S.C. § 2104(a)(4). Accordingly, the settlement amount falls squarely within the potential recovery available to Plaintiffs and takes into account the certainty of damages.

### D.    The Complexity, Expense, and Likely Duration of the Litigation Weighs in Favor of Approval

The complexity, expense, and likely duration of this case support approval of the proposed Settlement Agreement.

> A Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.  In this respect, "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush."

*Garza v. Sporting Goods Props., Inc.,* No. Civ. A. SA-93-CA 108, 1996 WL 56247, at *13-14 (W.D. Tex. Feb. 6, 1996) (quoting *In Re Shell Oil Refinery*, 155 F.R.D. 552, 560 (E.D. La. 1993))(internal citations omitted). This case involves complex factual and legal issues. For example, Defendants vigorously argued, and continue to deny, that any of the named Defendants employed Plaintiffs or the putative Settlement Class members for purposes of WARN Act liability. To the extent Plaintiffs could establish "employer" status on behalf of any of the Defendants, the Defendants also asserted the unforeseen business circumstances and faltering business exceptions to the WARN Act. An indicia of the complexity of this case is the fact that it was bifurcated to first address the Employer Issue before even reaching the merits of Plaintiffs' claims.

Additionally, this case has been on the docket for over a year now, and had the Parties not settled at this time, the Parties anticipate this matter would have been litigated for at least another eight to nine months. During this time, the Parties would have conducted additional discovery on Plaintiffs' class action allegations as well as the exceptions to the WARN Act pled by the Defendants. Such future litigation would include a contested class certification hearing, the potential for an interlocutory appeal of any order on class certification, summary judgment motions, the potential for an interlocutory appeal of any order on summary judgment, a trial on the merits, and possibly further appeals and proceedings.  This settlement avoids the unnecessary costs and delay of litigation.  Accordingly, this factor favors approval of the settlement.

**E.     The Stage of the Litigation and Amount of Discovery Completed Weighs in Favor of Approval**

The fifth factor—the stage of the litigation and amount of discovery completed—also weighs in favor of approval, as the parties have exchanged substantial information and documents to arrive at the proposed settlement, and thus are in an excellent position to evaluate the value of each claim. *See Vaughn v. Am. Honda Motor Co.*, 627 F. Supp. 2d 738, 747-48 (E.D. Tex. 2007) (approving settlement where class counsel conducted discovery and had a full appreciation of the merits of the case). The Parties reached a settlement after engaging in written discovery, depositions, and summary judgment briefing on the Employer Issue. Although the ultimate issue of liability was bifurcated and relegated to the second half of the Docket Control Order, the Parties engaged in some discovery related to Defendants' defenses to the WARN Act, such as the applicability of the faltering business and unforeseen business circumstances exceptions. The Parties believe they had more than sufficient discovery to engage in a knowledgeable and equitable arm's length settlement negotiation. As a result of the parties' thorough exchange of information and analysis of relevant law, the parties are in an excellent position to evaluate the value of the claims at issue.  Accordingly, the stage of the litigation and the amount of discovery conducted weighs in favor of approving the settlement.

**F.     The Opinions of Class Counsel, the Class Representatives and Absent Class Members Weigh in Favor of Approval**

The sixth and final factor—the opinion of class counsel, the class representatives, and absent class members—also supports approval of this settlement.  *See Shell*, 155 F.R.D. at 565 (noting, as favorable factor in approving settlement, that class counsel, the class representatives, and defendants' counsel all agreed that the settlement was fair and reasonable). In the estimation of Class Counsel, this settlement will result in the payment of damages that will fall within a

reasonable range of any damages that could have been determined appropriate by the Court if the matter had been litigated. Accordingly, Class Counsel's opinion is that the settlement is fair, reasonable, and adequate.  After full review of the settlement information and discussion with counsel, the Class Representatives also approved of the settlement as being fair, adequate, and reasonable. In reviewing a proposed settlement, the Court "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced, capable counsel." *Lelsz v. Kavanaugh*, 783 F. Supp. 286, 297 (N.D. Tex 1991) (quoting Manual for Complex Litigation §30.41).

The opinions of absent class members favor settlement as well.  When evaluating the opinions of absent class members, the Court "should carefully weigh the number and nature of objections while keeping in mind the settlement can be fair even if a large number of class members oppose it."  *Garza*, 1996 WL 56247, at *19.

Once the Court determines that the settlement is fair, then the Federal Rules direct the Court to provide notice to the class members of a formal fairness hearing. *See, e.g., McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 432 (E.D. Tex. 2002); Fed. R. Civ. P. 23(e). The notice should be provided in a "reasonable manner" that is "practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B).  Specifically, the Federal Rules require that the notice provide, clearly, concisely, and in easily understood language:

1. The nature of the action;

2. The definition of the class certified;

3. The class claims, issues, or defenses;

4. That a class member may enter an appearance through an attorney if the member so desires;

5. That the court will exclude from the class any member who requests exclusion;

6. The time and manner for requesting exclusion; and

7. The binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B); *see also Telles v. Midland College*, 2018 WL 7352426, at *4 (E.D. Tex., Apr. 30, 2018).

The Notice, **Exhibit 3**, satisfies all these elements.  First, it explained the nature of the action, in particular that it pertains to all individuals who worked at LMS's Tyler, Texas facility and were terminated on or about March 28, 2019.

Second, the Notice apprises Settlement Class members of the pendency of the settlement and informs them of all material settlement terms.  The Notice explains that class members who "do nothing" will remain in the Settlement Class, receive a settlement payment, and be bound by the settlement and all orders and judgments.  The Notice describes how to opt out of the settlement, and informs class members that if they do not opt out they will receive a share of the Gross Settlement Amount based on a calculation of their final rate of pay over a period of 42 working days plus medical expenses incurred between March 28, 2019 and May 27, 2019.

Third, the Notice advises class members that they can examine the Settlement Agreement and all other pleadings from this lawsuit through the Court.  Finally, class members were provided full notice of their right to file objections, attend the fairness hearing, or hire their own attorney at their expense.

The proposed manner of notice and timetable for further proceedings are also reasonable. Notice was sent to class members by first-class mail to their last known address within 15 days after the Settlement Agreement was preliminarily approved and was also sent via e-mail to those class members with last known email addresses.  Notices returned as undeliverable were re-mailed using the most recent contact information from available databases. Class members had a reasonable amount of time, 45 days from the date the notice was mailed, to object to the settlement or mail an opt-out request.

Thus, all six factors identified by the Fifth Circuit as relevant to the approval of a class action settlement support this Court granting final approval to the proposed settlement.

## III.

### CLASS COUNSEL'S ATTORNEYS' FEES, COSTS, AND EXPENSES REQUEST SHOULD BE APPROVED

Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), and this Court's prior orders, the undersigned counsel files this request seeking an award of attorneys' fees and reimbursement of expenses associated with the prosecution of this matter.

**A.**    ***Standard for Awarding Class Action Attorneys' Fees***

Rule 23(h) provides that, in a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement.  Here, the parties have entered a settlement agreement which provides that the Defendants will not object to any request for attorneys' fees and costs, provided the request is no greater than $150,000. Thus, class counsel seeks approval of a total award of $150,000. Because the expenses in this case total $12,194.57, the actual requested attorneys' fee award is $137,805.43.

This Court entered an Order on June 12, 2020 preliminarily approving the class settlement. However, "[i]n a class action settlement, the district court has an independent duty under Federal

Rule of Civil Procedure 23 to the class and the public to ensure attorneys' fees are reasonable." *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008). "To fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees." *Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). Accordingly, Class Counsel provides herewith the information necessary to assess the reasonableness of the requested fee award.

**B.**     ***Class Counsel Requests Only Lodestar Attorney's Fees***

The Fifth Circuit has expressly endorsed the use of the "lodestar" method to calculate reasonable attorneys' fees in class action cases. The lodestar is computed by multiplying the number of hours reasonably expended by the reasonable hourly rate. *Forbush*, 98 F.3d at 821. The Fifth Circuit does permit this Court to apply a multiplier to the lodestar based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) to increase a pure lodestar calculation to adjust for risk, novelty of the claims, and other factors. However, by agreement of the parties, the undersigned does not seek any multiplier and only seeks a portion of the actual lodestar fees and related case expenses. Thus, a full analysis of the *Johnson* factors is not necessary.

The Fifth Circuit has noted that a court is itself an expert in attorneys' fees and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses to value. *In re OCA, Inc. Sec.*, 2009 WL 512081, at *25 (quoting *Campbell v. Green*, 112 F.2d 1434, 144 (5th Cir. 1940)). The hourly rates sought herein are commensurate and reasonable within the legal community for attorneys of similar experience as the undersigned counsel.[19] The undersigned seeks the reasonable attorneys'

---

[19] *See* Jeff Embry's Affidavit.  **Exhibit 4**; Chris Peirce's Affidavit. **Exhibit 5**; and Meg Pennell's Affidavit. **Exhibit 6**.

in the amount of $137,805.43. Class counsel tracked their time and utilized a fee rate of $400 per hour for lead counsel, $350 per hour for senior counsel, $175 for junior associate counsel to calculate a total lodestar method supported attorneys' fee of $251,710. These rates are standard and reasonable within the Eastern District of Texas. Thus, the requested amount of $137,805.43. equates to a significant reduction of the reasonable hourly rate of attorneys actually expended.

On June 12, 2020, this Court entered an Order appointing Hossley & Embry, LLP as Class Counsel.  Hossley & Embry, LLP, by and through the undersigned, has handled this litigation from its beginning in 2019. This case involves allegations that the Defendants failed to comply with the WARN Act in terminating the employees of the plant in Tyler, Texas and/or conducting a mass layoff of the Tyler, Texas plant.  The Defendants' have denied these claims throughout.  The case has been fully litigated and required the analysis of thousands of documents, travel, depositions, and a myriad of related legal issues. Thus far, class counsel has devoted 708.9 hours in total attorney time to this matter.[20]  At the aforementioned rates, this equates to $251,710.   The case expenses for this litigation total $12,194.57.[21]

The undersigned estimates an additional 40 hours of attorney time and 10 hours of staff time will be required to prepare for and handle the final approval hearing scheduled for August 26, 2020 and to deal with the administration of the class and responding to class members' inquiries. Thus, the total legal fees through conclusion based on a pure lodestar approach would be approximately $251,710.00.  By agreement with Defendants, the undersigned has agreed to only seek a total payment of $150,000.00 for all fees and expenses. Thus, undersigned attorney's fees will actually be less than the basic lodestar and less than the amount of time actually spent as of the filing of this Motion. Further, the attorney's fees of $137,805.43 represents 26.8% of the total

---

[20] *See Id. (including time sheets)*.
[21] *See* Expense Sheet.  **Exhibit 8**.

settlement, well less than the Plaintiffs' contingency agreement rate of 40%. The undersigned prays the Court find that this amount in attorneys' fees and expenses is reasonable and award the undersigned $150,000.00 in attorneys' fees and expenses.  Defendants are not opposed to this request.

## IV.

## DARRELL FLORENCE AND DERRICK FOSHEE'S REQUEST FOR AN INCENTIVE AWARD

Darrell Florence and Derrick Foshee sought out legal counsel and took the initiative to pursue their legal rights against Defendants. These Class Representatives fully participated with Class Counsel in the handling of this litigation. The Class Representatives' involvement included participation in various conferences concerning the facts and legal issues involved in the case. In addition, the Class Representatives provided various documents and helpful information to Class Counsel to aid the prosecution of the case on behalf of all class members. Accordingly, the Class Representatives seeks an incentive award of $5000.00 each.  Defendant has agreed to this request.

## CONCLUSION

For the reasons outlined above, Plaintiffs' pray this Court enter an order granting final approval of the Settlement Agreement; award Hossley & Embry, LLP $150,000.00 in attorneys' fees and reimbursed expenses; and award Class Representatives, Darrell Florence and Derrick Foshee $5,000.00 each as incentive award for asserting the subject claims and fully participating in the litigation.

Respectfully submitted,


*/s/ Christopher P. Peirce*
State Bar No. 24002052
jeff@hossleyembry.com
Christopher P. Peirce
State Bar No. 24046604
cpeirce@hossleyembry.com
**Hossley & Embry, LLP**
515 S. Vine Ave.
Tyler, Texas 75702
(903) 526-1772
(903) 526-1773 (fax)
**ATTORNEYS FOR PLAINTIFFS**


## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned counsel has conferred with counsel for defendants and defendants agree to the relief sought.

/s/Jeffrey T. Embry
Jeffrey T. Embry

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August 2020, a true and correct copy of the above and foregoing instrument was served upon all counsel of record referenced below via the Court's ECF Filing System:

J. Michael Rose
Texas Bar No. 24041819
Evan C. Blankenau
Texas Bar No. 24092142
LOCKE LORD LLP
600 Travis Street, Suite 2800
Houston, Texas 77002-3095
Telephone:    (713) 226-1684
Facsimile:    (713) 229-2626
Email: mrose@lockelord.com
Email: evan.blankenau@lockelord.com
***ATTORNEYS FOR DEFENDANTS***

*/s/ Christopher P. Peirce*
Christopher P. Peirce